UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ZUFFA, LLC d/b/a/ The Ultimate
Fighting Championship (UFC),

       Plaintiff,

v.

TROY PARKER, individually, and
as officer, director, shareholder,
and/or principal of Fat Boys Bar &
Grill, Inc., d/b/a Fatboys Bar and Grill
a/k/a Fatboys Bar & Grill; and FAT
BOYS BAR & GRILL, INC., d/b/a
Fatboys Bar and Grill a/k/a Fatboys
Bar & Grill,

       Defendants.

**ORDER**
Civil File No. 11-3451 (MJD/SER)

Wayne D. Lonstein, Lonstein Law Office, PC, and Josh Jacobson, Law Office of Josh Jacobson, P.A., Counsel for Plaintiff.

No appearance for Defendants.

## I.   INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Default Judgment. [Docket No. 14]  The Court heard oral argument on April 27, 2012.

## II.   BACKGROUND

1

A.     **Factual Background**

Plaintiff Zuffa, LLC does business as The Ultimate Fighting Championship ("UFC"). Plaintiff owns the rights to the May 28, 2011 UFC #130 program (the "Program"). (Am. Compl. ¶¶ 18, 34; Epstein Aff. ¶ 3; Epstein Aff., Ex. A.) The Program was broadcast through closed circuit television and by encrypted satellite signal. (Am. Compl. ¶ 18.) Plaintiff marketed the broadcast to commercial establishments in Minnesota, and other states, for a fee. (Am Compl. ¶ 19; Epstein Aff. ¶ 3.) In order for a commercial establishment to lawfully exhibit the Program, it would need to receive a license from Plaintiff or its exclusive commercial distributor, Joe Hand Promotions, Inc. (Epstein Aff. ¶ 4.)

Defendant Troy Parker, individually, and as officer, director, shareholder, and/or principal of Fat Boys Bar & Grill, Inc. d/b/a Fatboys Bar and Grill a/k/a Fatboys Bar & Grill; and Defendant Fat Boys Bar & Grill, Inc., d/b/a/ Fatboys Bar and Grill a/k/a Fatboys Bar & Grill ("Fatboys") (collectively, "Defendants") unlawfully intercepted and exhibited the Program within Fatboys' commercial establishment located at 21283 Ulysses St. NE, Cedar, Minnesota, on May 28, 2011. (Epstein Aff. ¶ 8; Epstein Aff., Ex. C, Fox Investigative Affidavit and Photographs; Epstein Aff., Ex. D, Fox Investigative Video.) An undercover

investigator recorded the unauthorized exhibition in Fatboys. (Epstein Aff. ¶ 8; Epstein Aff., Exs. C-D.) Defendants' exhibition of the Program was without a license from Plaintiff and was not authorized by Plaintiff. (Epstein Aff. ¶ 9; Epstein Aff., Ex. B.) The investigator viewed the encrypted broadcast of the Program playing on twelve of the thirteen television sets in Fatboys. (Epstein Aff., Ex. C.) Fatboys has an estimated fire code occupancy of between 101 and 200 patrons. (Id.)

### B. Procedural History

Plaintiff filed a Complaint against Parker and Fatboys on November 28, 2011. [Docket No. 1] Plaintiff filed an Amended Complaint against Defendants on November 29, 2011. [Docket No. 4] The Amended Complaint alleges Count One: willful violation of the Communications Act of 1934, 47 U.S.C. § 605(a); Count Two: willful violation of the Communications Act of 1934, 47 U.S.C. § 553; and Count Three: willful copyright infringement in violation of 17 U.S.C. § 501(a).

Defendants were both served on January 6, 2012. [Docket Nos. 7-8] Their answer was due on January 27, 2012. They failed to answer or otherwise appear. The Clerk's Office entered default against Defendants on February 15, 2012.

[Docket No. 13] Plaintiff now moves for entry of default judgment. It has served all documents related to this motion on Defendants by mail. Defendants have made no appearance in this matter.

## III. DISCUSSION

### A. Plaintiff's Requested Relief

Plaintiff requests the following relief, jointly and severally against both Defendants: $10,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); $20,000 in enhanced statutory damages under 47 U.S.C. § 605(e)(3)(C)(ii) for willful violation of 47 U.S.C. § 605(a) for commercial advantage or private financial gain; and costs and attorney's fees of $2,738.00 under 47 U.S.C. § 605(e)(3)(B)(iii).

### B. Default

Because Defendants have failed to answer or otherwise appear in this matter, Plaintiff is entitled to default judgment. Fed. R. Civ. P. 55. The Court accepts the factual allegations in the Amended Complaint as true because "[a] default judgment entered by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint."

Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th Cir. 2004) (citations omitted).

### C. Copyright Act

Plaintiff asks for no finding with regard to Count Three, the Copyright Act claim.

### D. Elements of the Federal Communications Act Claims

Count One asserts a violation of 47 U.S.C. § 605(a), and Count Two asserts a violation of 47 U.S.C. § 553. Plaintiff only seeks recovery under § 605(a).

Under § 605, "[a]n aggrieved person must show that the defendant (1) intercepted or aided the interception of proprietary satellite programming and (2) divulged or published, or aided in the divulging or publishing of, the programming transmitted by the plaintiff." DirecTV v. Deskin, 363 F. Supp. 2d 254, 258 (D. Conn. 2005) (citing Cal. Satellite Sys. v. Seimon, 767 F.2d 1364, 1366 (9th Cir. 1985)). An aggrieved person "shall include any person with proprietary rights in the intercepted communication by wire or radio." 47 U.S.C. § 605(d)(6). The statute only applies to satellite television transmissions if the programming is encrypted and there is a marketing agent established to authorize lawful private viewing of the transmissions by individuals. Id. § 605(b).

### E. Whether § 605 or § 553 Applies to Defendants' Actions

The Program originated via a satellite uplink and was then retransmitted to cable systems and satellite companies via satellite signal. Due to Defendants' default, Plaintiff cannot conduct discovery and determine with any certainty how Defendants pirated the Program. Thus, Plaintiff cannot conclusively prove whether Defendants intercepted the Program when it was in the form of a satellite signal or when it was being transmitted over cable.

Courts have been divided on when § 605 applies versus § 553 in cases involving both satellite signals and cable signals. J&J Sports Prods. v. Diaz De Leon, No. 2:11–CV–02051, 2012 WL 79877, at *2 (W.D. Ark. Jan. 11, 2012). However, this Court need not resolve the split of authority because, based on Defendants' default, they have admitted that they pirated the Program in violation of § 605, and Plaintiff does not seek damages under § 553. See id. at *2. See also J&J Sports Prods., Inc. v. Juarez, No. 2:10-1071 WBS KJN (TEMP), 2011 WL 221634, at *3 (E.D. Cal. Jan. 21, 2011), adopted by slip op. (Feb. 11, 2011 E.D. Cal.).

### F. Factual Admissions

Based on their default, Defendants have admitted the allegations in the Amended Complaint that they knowingly and willfully unlawfully intercepted, received and/or de-scrambled the satellite signal for the Program and exhibited the Program to patrons of their establishment, Fatboys, live, for private financial gain or direct or indirect commercial advantage. (Am. Compl. ¶¶ 20, 28.) They admit that they "used an illegal satellite receiver, intercepted Plaintiff's signal and/or used a device to intercept Plaintiff's broadcast." (Id. ¶ 21.) Parker has also admitted that he was the individual with supervisory capacity and control over all Fatboys' operations on May 28, 2011; and that he received a financial benefit from the operations of Fatboys on May 28, 2011. (Id. ¶¶ 8-9.)

Through the Amended Complaint and affidavits, Plaintiff has shown that the Program was encrypted, proprietary, and available for broadcast to commercial establishments in the State of Minnesota through its exclusive commercial distributor. (Am. Compl. ¶ 18; Epstein Aff. ¶¶ 3-4.)

Plaintiff has expended substantial resources marketing the Program. (Epstein Aff. ¶ 12.) It exclusively authorized Joe Hand Promotions, Inc. to distribute the Program to commercial establishments in Defendants' geographical area. (Id. ¶ 4.) Defendants knew that the Program was available

7

for a fee, but willfully exhibited the Program in Fatboys for purposes of indirect commercial advantage or private financial gain.  (Am. Compl. ¶¶ 20, 28.) Defendants did not contract with Plaintiff or its authorized agent for commercial distribution, Joe Hand Promotions, Inc., and, therefore, did not have proper authority to exhibit the Program commercially on May 28, 2011.  (Epstein Aff. ¶ 6-7; Hand Aff. ¶¶4-5.)

Plaintiff has demonstrated a willful violation of § 605(a) for purposes of direct or indirect commercial advantage or private financial gain.

### G.     Damages Requested

The damages available under § 605(a) are actual damages or statutory damages, for each violation, "of not less than $1,000 or more than $10,000," or, if the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the Court may increase the actual or statutory damages award by up to $100,000 for each violation.  47 U.S.C. § 605(e)(3)(C).

Substantial monetary damages are warranted because, in this commercial context, the decision to violate the law is financial.  As long as defendants can attract patrons by exhibiting these events, and the cost of doing so is low, they

will continue to be pirates. Moreover, Plaintiff not only lost the licensing fee which Defendants would have paid, it likely lost the licensing fee for neighboring establishments because they were less likely to pay the licensing fee when the Program was available to patrons at Fatboys. Plaintiff has likely suffered the loss of goodwill from other commercial establishments that purchased the Program and lost customers to Fatboys or believe that Plaintiff misled them about their competition for broadcasting the Program on May 28, 2011. Additionally, Defendants' willful refusal to respond to this lawsuit hampers Plaintiff's ability to demonstrate the manner in which the Program was stolen and how many additional programs have been stolen by Defendants in a similar manner.

Enhanced damages are also available when the violation was willful and committed for direct or indirect commercial advantage or private financial gain. "'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'" Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) (quoting ON/ TV v. Julien, 763 F.2d 839, 844 (7th Cir. 1985)).

> There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously . . .

Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (citations omitted).  Furthermore, because Fatboys "is a commercial establishment . . . commercial advantage or financial gain can fairly and reasonably be inferred from the facts."  Joe Hand Promotions, Inc. v. Cat's Bar, Inc., No. 08-4049, 2009 WL 700125, at *3 (C.D. Ill. Mar. 16, 2009).

The evidence in the record shows that Defendants displayed the Program on twelve separate televisions and advertised the Program on a board within the bar, so it is clear that the illegal exhibition was pre-planned and intended to draw patrons for financial gain.  Plaintiff has pled the elements to establish willful infringement.  See, e.g., Kingvision Pay-Per-View, Ltd. v. Ruiz, No. 04 Civ. 6566(DC), 2005 WL 589403, at *2 (S.D.N.Y. Mar. 9, 2005).

The Court concludes that the amount of damages requested by Plaintiff – $10,000 in statutory damages under § 605(e)(3)(C)(i)(II) and $20,000 in enhanced statutory damages under 47 U.S.C. § 605(e)(3)(C)(ii) for willful violation of § 605(a) for commercial advantage or private financial gain – is reasonable and

10

appropriate in light of the nature of Defendants' violation, the statutory scheme, and the particular circumstances of this case.

### H.     Attorney's Fees and Costs

Under § 605, the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).  Plaintiff is an aggrieved party because it has a proprietary interest in the Program.  Id. § 605(d)(6).  Plaintiff's requested attorney's fees and costs are supported by the record and are reasonable.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Default Judgment [Docket No. 14] is **GRANTED**.

2. Plaintiff ZUFFA, LLC d/b/a/ The Ultimate Fighting Championship (UFC) is awarded judgment in its favor and against Defendant TROY PARKER, individually, and as officer, director, shareholder, and/or principal of Fat Boys Bar & Grill, Inc., d/b/a Fatboys Bar and Grill a/k/a Fatboys Bar & Grill; and Defendant FAT BOYS BAR & GRILL, INC., d/b/a Fatboys Bar and Grill a/k/a Fatboys Bar & Grill, jointly and severally in the total amount of thirty two thousand seven hundred thirty eight dollars ($32,738.00) consisting of:

    a. ten thousand dollars ($10,000.00) pursuant to  47 U.S.C. § 605(e)(3)(C)(i)(II) and

b. twenty thousand dollars ($20,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), for Defendant's willful violation of 47 U.S.C. § 605(a); and

c. costs and attorney's fees of two thousand seven hundred thirty eight dollars ($2,738.00) pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   April 27, 2012                              s/ Michael J. Davis
                                                     Michael J. Davis
                                                     Chief Judge
                                                     United States District Court